IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-HC-2173-BO

**Jerry William McNeill, Jr.**,

             Petitioner,

v.

**Frank L. Perry**,

             Respondent.

**Order &
Memorandum & Recommendation**

      This matter is before the court on Respondent Frank L. Perry's Motion for Summary Judgment. D.E. 13. Also before the court is Petitioner Jerry William McNeill, Jr.'s Motion to Appoint Counsel. D.E. 11. After examining the pleadings and the record, the undersigned denies McNeill's Motion to Appoint Counsel. Furthermore, it is recommended that the District Court grant Perry's Motion for Summary Judgment and dismiss McNeill's petition be dismissed.

      On August 7, 2015, McNeill, a state inmate, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. D.E. 1. After conducting an initial review the court allowed the matter to proceed. *See* Mem. & Order, D.E. 8. McNeill subsequently filed a motion requesting appointed counsel. D.E. 11. On May 9, 2016, Perry answered the habeas petition (D.E. 12) and filed a motion seeking summary judgment. McNeill filed two responses in opposition to Perry's motion. D.E. 23, 24. As explained below, the undersigned denies McNeill's Motion to Appoint Counsel (D.E. 11), and recommends that the District Court grant Perry's Motion for Summary Judgment (D.E. 13).

## I. Background

### A. McNeill's Trial and Appeal

On January 22, 2002, a state-court jury convicted McNeill of the following felonies: (1) attempted robbery with a dangerous weapon, (2) assault with a deadly weapon inflicting serious injury, (3) first-degree burglary, and (4) conspiracy to commit robbery with a dangerous weapon. Pet. at 1, D.E. 1; *see also State* v. *McNeill*, 158 N.C. App. 96, 97, 580 S.E. 2d 27, 28 (2003) (*"McNeill I"*). Additionally, McNeill pled guilty to a charge of being a habitual felon. *See id.* The judge sentenced McNeill to three consecutive active terms of between 116 and 149 months in prison. *See id.*

The evidence at trial may be summarized as follows. On the afternoon of March 1, 2001, McNeill called his co-defendant, Felipe Sloan, and suggested that they commit a robbery. After purchasing supplies for the robbery and picking up a rifle, McNeill and Sloan went to the house of victim Bruce Lovett's mother. On that evening Lovett visited his mother. As Lovett left his mother's house he saw McNeill and Sloan in the bushes. Sloan remained in the bushes and McNeill approached Lovett, pointed the gun at him, and told him to "give it up." After a surprised Lovett failed to comply, McNeill shot Lovett in his right foot.

Lovett fled back to his mother's house. As he tried to close the door, McNeill burst into the house. Lovett grabbed the rifle and a struggle ensued. Lovett eventually gained control of the rifle. At that point, Sloan jumped on Lovett's back. Lovett fell to the floor with the rifle pinned under him. McNeill ran from the house. Lovett told Sloan that he was going to shoot Sloan when he got free. Sloan, realizing that McNeill was gone, kept Lovett pinned to the ground until the police arrived.

Authorities arrested McNeill several weeks later. Sloan pled guilty and testified against McNeill. *See* Br. at 8–11, D.E. 15–1.

On appeal, McNeill challenged his sentence, contending the court erroneously assessed him three prior record points. He also claimed the trial court's procedure to accept his plea to habitual felon status was insufficient. The North Carolina Court of Appeals rejected his procedural claim but determined that the court improperly sentenced McNeill and remanded the case to the trial court for resentencing. *McNeill,* 158 N.C. App. at 99, 580 S.E. 2d at 28.

The trial court resentenced McNeill on March 11, 2004, to three consecutive sentences and one concurrent sentence of 100–129 months' imprisonment. *See State* v. *McNeill,* 168 N.C. App. 730, 609 S.E. 2d 497 (2005) (*"McNeill II"*). McNeill appealed and on March 1, 2005, the North Carolina Court of Appeals affirmed the judgment. *See id.* McNeill did not seek discretionary review from the Supreme Court of North Carolina.

### B.     Post-Conviction Proceedings

*First Motion for Appropriate Relief.* On September 19, 2012, McNeill filed a Motion for Appropriate Relief ("MAR") in the trial court claiming that his trial counsel was ineffective during his re-sentencing by conceding that McNeill should not receive a mitigated range sentence, but rather, argued that the court should sentence him at "the bottom of the presumptive [range] at 80 months minimum," *see* MAR at 3–7, D.E. 15–7, and by failing to present mitigating evidence at the re-sentencing hearing, *see id.* at 7–8. McNeill also filed a motion to arrest judgment on his first-degree burglary conviction. *See id.* at 13. Without admitting ineffective assistance, the State consented to a re-sentencing, but opposed the motion to arrest judgment on the burglary. *See id.* at 14.

The trial court conducted a re-sentencing proceeding, heard evidence in mitigation, and considered arguments by defense counsel on mitigation and on the motion to arrest judgment. *See* Resentencing Hr'g Tr. at 21–42, D.E. 15–8. The court found the motion to arrest judgment was procedurally barred because the issue could have been raised in McNeill's appeal but was not, and alternatively, that claims related to the burglary conviction were without merit. *See id.* at 44–45. The judge found, in his discretion, that the evidence in mitigation was insufficient to merit a mitigated sentence, and sentenced McNeill in the presumptive range, to 100–129 months imprisonment for each of the convictions for attempted robbery with a dangerous weapon, assault with a deadly weapon inflicting serious injury, and conspiracy to commit robbery with a dangerous weapon to run consecutively, and to 100–129 months for the first-degree burglary to run concurrently with the conspiracy conviction. *See id.* at 45–46.

On appeal, the North Carolina Court of Appeals found the motion to arrest judgment on the burglary was procedurally barred and affirmed the sentences. *State* v. *McNeill,* 234 N.C. App. 666, 763 S.E.2d 16 (2014). On August 4, 2014, McNeill filed petitions for discretionary review and certiorari in the Supreme Court of North Carolina. On December 18, 2014, the Supreme Court denied the petitions. *See* Order of the Supreme Court, D.E. 15–13.[1]

*Second MAR.* On February 24, 2015, proceeding *pro se,* McNeill filed a second Motion for Appropriate Relief and raised five claims: (1) the trial court lacked jurisdiction over the habitual felon indictment, the district attorney lacked constitutional authority to indict McNeill as a habitual felon, the habitual felon statute violates the Double Jeopardy Clause of the Fifth Amendment, the habitual felon indictment was defective on its face, and McNeill did not plead

---

[1] On October 16, 2013, the trial court entered an order correcting McNeill's sentence after it was determined that McNeill had been granted 991 days in-custody credit for time served on a case from Lee County. *See* Order, D.E. 15-11.

4

Case 5:15-hc-02173-BO   Document 28   Filed 02/03/17   Page 4 of 17

guilty to having attained the status of a habitual felon; (2) he was entitled to be sentenced under an amended sentencing provision enacted after his conviction; (3) his sentence was grossly disproportionate under the Eighth Amendment; (4) he was denied jail credits in violation of the Due Process and Equal Protection Clauses of the Fourteenth and Eighth Amendments; and (5) his original trial counsel, his original appellate counsel, and his MAR counsel rendered him ineffective assistance of counsel. *See* Second MAR, D.E. 15–14. On May 26, 2015, the trial court denied the second MAR. *See* Order, D.E. 15–15.[2]

On August 7, 2015, McNeill filed a habeas petition in this court.

## II. Motion for Appointment of Counsel

The court first addresses McNeill's Motion to Appoint Counsel. D.E. 11. No right to counsel exists in habeas corpus actions. *See, e.g.*, *Pennsylvania* v. *Finley*, 481 U.S. 551, 555 (1987). Nonetheless, the court may appoint counsel if it determines that "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). This action does not present legally complex issues, and McNeill has set forth his claims adequately. Thus, the interests of justice do not require the appointment of counsel. Accordingly, McNeill's motion to appoint counsel is denied.

## III. Standard of Review

### A. Summary Judgment Standard

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986). Once the

---

[2] McNeill filed a motion to reconsider denial of the second MAR which was denied. *See* Order, D.E. 15-16. The state court of appeals denied review. *See* Docket Sheet, D.E. 15-17.

moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp*, 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Scott* v. *Harris*, 550 U.S. 372, 378 (2007).

>    B.    **The Standard of AEDPA**

The court's review of McNeill's claims is governed by 28 U.S.C. § 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Young* v. *Catoe,* 205 F.3d 750, 755 n.2 (4th Cir. 2000) (quoting *Thomas* v. *Davis,* 192 F.3d 445, 455 (4th Cir. 1999)). The Court may not grant relief on any such habeas claim unless the

6

underlying state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also* 28 U.S.C. § 2254(e)(1) (establishing, in federal habeas proceedings, presumption of correctness as to state court factual findings, subject to rebuttal only by "clear and convincing evidence").

To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[ ] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[ ] at a result opposite" to the United States Supreme Court. *Williams* v. *Taylor,* 529 U.S. 362, 405 (2000) (O'Connor, J., concurring). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407, 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

**IV.     Discussion**

McNeill advances four claims. First, he challenges his conviction as a habitual felon. Pet. ¶ 12 (Ground One). Second, he claims that the Superior Court erred by failing to retroactively apply state sentencing provisions, enacted in 2009 and 2011, which would have reduced his sentence. *See id.* (Ground Two). Third, he claims that his sentence was grossly disproportionate in violation of the Eighth Amendment. *Id.* (Ground Three). Finally, he argues that he received ineffective assistance of counsel at his resentencing proceeding. *Id.* (Ground Four). The Superior

7

Court considered and denied the claims on the merits in connection with McNeill's second MAR. *See* Order, D.E. 15–15.

Because this matter comes before the court pursuant to McNeill's § 2254 petition for habeas corpus relief, the court's review focuses on the propriety of the state court's decision. *See Baum* v. *Rushton,* 572 F.3d 198, 209 (4th Cir. 2009). In particular, this court may award relief only if the state court's decision is found to be deficient under the highly deferential standards contained in § 2254(d)(1) and (2). *See id.; see also Cullen* v. *Pinholster,* 563 U.S. 170, 181 (2011) (observing that Section 2254(d) imposes "a difficult to meet" and a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks omitted). "The petitioner carries the burden of proof." *Id.*

McNeill has not satisfied Section 2254(d). As a threshold matter, McNeill's claims are conclusory, without argument or analysis. "Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." *Nickerson* v. *Lee,* 971 F.2d 1125, 1136 (4th Cir. 1992) *cert. denied,* 507 U.S. 923 (1993). Thus, McNeill's claims should be dismissed on that ground without more. That notwithstanding, McNeill has failed to establish that the state courts' denial of his claims contradicted or unreasonably applied any United States Supreme Court holding.

### A. Sufficiency of the Indictment

McNeill argues that the habitual felon indictment in his case was defective because the indictment's file number is the same as the number of the principal felony, he never admitted to the habitual felon status, he was not informed of the prior felonies used to support the habitual felon status, and the prosecutor had no jurisdiction to indict him as a habitual felon. Perry

8

contends that McNeill's habitual felon claims are unsupported and conclusory and in any event are not subject to federal habeas review. Perry further argues that the record contradicts McNeill's claims that his plea to being a habitual felon was uninformed.

The issue of the sufficiency of a state indictment is a matter of state law. A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable in federal habeas review. *See Wright* v. *Angelone,* 151 F.3d 151, 157 (4th Cir. 1998). Further, a state court's decision on a question of state law is binding in federal court. *See Estelle* v. *McGuire,* 502 U.S. 62, 67–68 (1991); *Thomas* v. *Davis,* 192 F.3d 445, 449 n.1 (4th Cir. 1999). Thus, review of this issue by this court is barred.

Moreover, McNeill's claim that his plea to being a habitual felon was uninformed is belied by the record. The transcript of plea in the present case make clear that McNeill was aware of what he pled to and that he intended to plead guilty to being a habitual felon. The trial court inquired, and McNeill acknowledged under oath, in open court, that his attorney had explained the habitual felon charge to him, he understood the nature and the elements of the charge, he was satisfied with his lawyer's services, he understood he was pleading guilty to the habitual felon charge, and he had in fact attained the status of a habitual felon. *See* Tr. of Plea, D.E. 15–3. McNeill signed the plea, along with the prosecutor and his attorney. *See id.* McNeill's attorney stated that he had "fully explained to the defendant the nature and elements of the charge(s) to which the defendant is pleading." *Id.* The trial court found, among other things, that there was a factual basis for the plea, McNeill was satisfied with his attorney, McNeill made an informed choice to plead, and the plea was made freely, voluntarily and understandingly. *Id.* The trial court's acceptance of McNeill's plea is neither contrary to, nor an unreasonable application

9

of, federal law as determined by the United States Supreme Court. McNeill's unsubstantiated claims should be dismissed.

B.  **Retroactive Application of Sentencing Statutes**

McNeill argues that the Superior Court violated his right to Equal Protection by refusing to retroactively apply changes in the state sentencing laws contained in the Structured Sentencing Act and the Justice and Reinvestment Act to reduce his sentence. Perry responds that McNeill has no federal constitutional right to retroactive application of the sentencing statutes.

In 2009, the North Carolina legislature amended the North Carolina Structured Sentencing Act ("SSA"), reducing the sentence lengths for certain crimes. *See* N.C. Gen. Stat. § 15A-1340.14 (2009). The December 1, 2009 amendments to the SSA were expressly made prospective only and do not apply to offenses committed before that date. *See id.; see also Dover* v. *Ball,* No. 5:12-CV-167 (RJC), 2013 WL 3781958, at *1 (W.D.N.C. July 18, 2013).

North Carolina's Justice Reinvestment Act of 2011 ("JRA"), effective December 1, 2011, reduced sentences for habitual felons. *See* N.C. Gen. Stat § 14–7.6 (2011). The JRA also expressly states that it is prospective only and does not apply to offenses committed before its effective date. *Id; see also Dover,* 2013 WL 3781958, at *1. McNeill was convicted based on offenses committed before the 2009 and 2011 sentencing amendments were made effective.

In any event, a habeas petitioner does not have a federal constitutional right to retroactive application of more lenient state sentencing laws where the state legislature or the state courts have indicated that the laws are only to be applied prospectively. *See Dockins* v. *Hines,* 374 F.3d 935, 940 (10th Cir. 2004) ("[W]e have repeatedly refused to find a federal constitutional right to retroactive application of the more lenient sentencing rules from which Petitioner seeks to benefit."); *McQueary* v. *Blodgett,* 924 F.2d 829, 834 (9th Cir. 1991) (holding that the prospective

application of a state sentencing law did not violate equal protection for those prisoners sentenced under a prior sentencing scheme). Furthermore, the federal constitution does not require "that two persons convicted of the same offense receive identical sentences." *Williams* v. *Illinois,* 399 U.S. 235, 243 (1970). Thus, the fact that McNeill, as an earlier offender, received a higher sentence than later offenders does not violate the federal constitution. The trial court's refusal to sentence McNeill under the amendments asserted is neither contrary to nor an unreasonable application of federal law as determined by the Supreme Court of the United States and this claim should be dismissed.

### C. Eighth Amendment Claim

Next, McNeill argues that his sentence was disproportionate in violation of the Eighth Amendment to the Constitution. In support, he argues that the Superior Court failed to apply a mitigated range sentence, that the court failed to "adjudicate 4,549 days of jail credit," and that the court failed to apply "evolving standards of decency" in sentencing him. Perry responds that McNeill's sentence does not implicate the Eighth Amendment.

The Eighth Amendment does not contain a proportionality guarantee. *Harmelin* v. *Michigan,* 501 U.S. 957, 965 (1991). "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (citing *Solem* v. *Helm,* 463 U.S. 277, 288 (1983)).

The purpose of habitual felon statutes is "to deter repeat offenders and … to segregate [them] from the rest of society for an extended period of time." *Rummel* v. *Estelle,* 445 U.S. 263, 284 (1980). Such extended punishments are justified by "the propensities [the offender] has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Id.*

Habitual felon statutes are constitutional. *See id.* at 268; *Spencer* v. *Texas*, 385 U.S. 554, 560 (1967) (both observing that habitual felon statutes have "been sustained … against contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities."). McNeill's claim does not implicate the Eighth Amendment because his sentence is not more extreme or disproportionate than other sentences previously upheld under the Eighth Amendment. *See*, *e.g.*, *Ragland* v. *Hundley*, 79 F.3d 702 (8th Cir. 1996), *cert. denied*, 519 U.S. 850 (1996) (upholding sentence of life without parole for felony murder even though defendant claimed he did not intend to kill the victim and was not the one who struck the fatal blow); *United States* v. *Valdez,* 16 F.3d 1324, 1334 (2d Cir. 1994) (upholding sentence of life without parole for "merely middle-level drug dealers"); *Rummel*, 445 U.S. at 285 (upholding life sentence under state recidivist statute, where the predicate offenses were for fraudulent use of a credit card to obtain $80.00 worth of goods, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses). McNeill's sentencing as a habitual felon does not run afoul of any decision of the United States Supreme Court and this claim should be dismissed.

McNeill's complaint that the state court failed to sentence him in the mitigating range alleges a violation of a North Carolina statute, N.C. Gen. Stat. § 15A–1340.16, and is not reviewable by this Court. *See* 28 U.S.C. 2254(a); *Estelle,* 502 U.S. at 67 ("We have stated many times that 'federal habeas corpus does not lie for errors of state law.'") (quoting *Lewis* v. *Jeffers,* 497 U.S. 764, 780 (1990)). Furthermore, North Carolina statute leaves it to the trial court's discretion whether to impose consecutive or concurrent sentences. *See* N.C. Gen. Stat. § 15A-1354(a) (2011) ("When multiple sentences of imprisonment are imposed on a person at the same time …, the sentences may run either concurrently or consecutively, as determined by the

court."). McNeill's sentence is neither contrary to nor an unreasonable application of federal law as determined by the United States Supreme Court and this claim should be dismissed.[3]

D. **Ineffective Assistance of Counsel**

McNeill alleges that his counsel rendered him ineffective assistance of counsel on four grounds: (1) counsel failed to file a motion to withdraw his guilty plea to the habitual felon status; (2) counsel failed to advocate for concurrent sentences at the bottom of the mitigated range; (3) counsel failed to present all of McNeill's mitigating factors; (4) counsel failed to advocate for all McNeill's jail credit; (5) counsel failed to challenge the habitual felon indictment as facially defective; and (6) counsel failed to file a double jeopardy claim on the charges of robbery with a dangerous weapon and burglary.

McNeill's contention that he received ineffective assistance of counsel is governed by the holding in *Strickland* v. *Washington,* 466 U.S. 668 (1984). In order to establish a claim under *Strickland¸* a convicted defendant first must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment" *Id.* at 687. Second, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* A defendant must make both showings in order to show that the conviction or sentence "resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* McNeill bears the burden of proving his counsel's performance resulted in

---

[3] McNeill's additional allegation that "the court failed to adjudicate 4,549 days of jail credit as it is explained in his collateral attacks MAR," Pet. ¶ 12, is insufficient on its face. Federal courts need not "sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief." *Adams v. Armontrout,* 897 F.2d 332, 333 (8th Cir. 1990). This claim should be dismissed.

13

prejudice as defined in *Strickland*. *See id.* at 696; *Fields* v. *Attorney Gen. of Md.,* 956 F.2d 1290, 1297 (4th Cir. 1992). "[E]very effort [must] be made to eliminate the distorting effects of hindsight." *Strickland,* 466 U.S. at 689.

McNeill's claim that the habitual felon indictment is invalid because it bears the same number as the principal felony does not warrant relief. An indictment affords the accused two protections. It is sufficient if, first, it "contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and secondly, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal of conviction." *Russell* v. *United States,* 369 U.S. 749, 763–64 (1962) (quotation marks omitted). Minor and technical deficiencies in an indictment which do not prejudice the accused are not a basis for overturning a conviction. *Id.* at 763. McNeill makes no claim that the indictment failed in either of its core functions. Thus, this claim should be dismissed.

McNeill further asserts that his trial counsel failed to advocate for concurrent sentences at the bottom of the mitigated range and that counsel failed to present "all mitigating factors." However, McNeill fails to identify any mitigating evidence trial counsel failed to present, or to specify the prejudice he suffered by its absence. Counsel presented a number of witnesses intended to establish that McNeill had a support system in the community, that McNeill had supported his family, and that he had a positive employment history. *See* Sentencing Tr. at 22–32, D.E. 15–8. Counsel argued these factors and that McNeill had, in part, accepted responsibility by pleading guilty to the habitual felon indictment. *See id.* at 35. Counsel urged the court to impose a sentence in the mitigated range. *See id.* at 35, 38. The trial court considered the evidence and argument of counsel and in its discretion, determined "… that there is nothing that

14

has been presented to the Court in way of mitigation that would justify a mitigated sentence …. I find no mitigating factors and I sentence [McNeill] in the presumptive range. *Id.* at 44. The record fails to establish either a deficient performance by counsel, or prejudice, as required by *Strickland.* This claim should be dismissed.

Finally, McNeill argues that counsel failed to raise a defense of double jeopardy on the charges of attempted robbery with a dangerous weapon and first-degree burglary. Double Jeopardy prohibits multiple punishments for the same offense absent clear legislative intent to the contrary. *Missouri* v. *Hunter,* 459 U.S. 359, 368–69 (1983). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not …. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Blockburger* v. *United States,* 284 U.S. 299, 304 (1932) (quotation marks omitted). McNeill's convictions for attempted robbery with a dangerous weapon, and burglary, each involved an element that the other did not.

The elements of attempted robbery with a dangerous weapon are: "(1) the unlawful attempted taking of personal property from another; (2) the possession, use or threatened use of a firearm or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim." *State* v. *Van Trusell,* 170 N.C. App. 33, 36–37, 612 S.E.2d 195, 198 (2005). These elements are satisfied here, where, armed with a rifle, McNeill confronted the victim and demanded that he "give it up." *See* Br. at 8, D.E. 15–1.

"The elements of first-degree burglary are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) of another (6) which is actually occupied at the time of the offense (7) with the intent to commit a felony therein." *State* v. *Clagon,* 207 N.C. App. 346, 350, 700 S.E.2d 89, 92 (2010) (internal quotation marks and citations omitted). These elements are established here by evidence that McNeill rushed into the victim's mother's house, at night, armed with a rifle, uninvited and without permission, intended to rob or further harm the victim. *See* Br. at 8–11, D.E. 15–1.

Based on the foregoing, McNeill committed multiple offenses, thus warranting multiple punishments. McNeill's convictions do not implicate the Double Jeopardy Clause, and this claim should be dismissed.

**V.     Conclusion**

Based upon the foregoing, the undersigned denies McNeill's Motion to Appoint Counsel (D.E. 11) and recommends that the District Court grant Perry's Motion for Summary Judgment (D.E. 13) and dismiss McNeill's petition (D.E. 1).

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on petitioner. Petitioner shall have until 14 days after service of the Memorandum and Recommendation on petitioner to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3);

Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If petitioner does not file written objections to the Memorandum and Recommendation by the foregoing deadline, petitioner will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, petitioner's failure to file written objections by the foregoing deadline will bar petitioner from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright* v. *Collins***, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: February 3, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge